[Crim. No. 2034. Second Appellate District, Division Two.—March 24, 1931.]

THE PEOPLE, Respondent, v. DE WITT ROGERS, Appellant.

Orbison & Irwin for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant was charged with grand theft by an information filed by the district attorney. He interposed two pleas, the one not guilty and the other not guilty by reason of insanity. This appeal is from the judgment pronounced upon the verdicts and from an order denying his motion for a new trial, but in fact only involves the trial upon the second plea of not guilty by reason of insanity.

Without raising a point, but just upon general principles, counsel for appellant first take a few scattering shots at what they term "the anomalous procedure" and then argue as their first reason for a reversal of the judgment that the testimony is insufficient to support the verdict. All that we need to do is to refer to the testimony which supports the jury's finding. Dr. E. H. Steele, one of the physicians appointed by the court, testified that he had made a special study of nervous and mental diseases; that he had made a mental and physical examination of the defendant; that he "observed him both in the jail, ward 110 of the County Hospital, and in the Psychopathic Ward of the County Hospital". This witness further testified as follows: "I observed his conduct and took into consideration his conduct as well as his answers to questions, and he claimed to have no recollection of the charge for which he was arrested, and could give a very poor history of his past. It was so poor, in fact, that it made me believe that he was trying to avoid giving information about himself. It was found that he had a positive Wasserman of the blood, but he had no physical signs showing that he had syphilis of the nervous system." He also testified that in his opinion the defendant knew the difference between right and wrong and

was "not legally insane"; Dr. Charles L. Allen, who it was stipulated had been connected with the lunacy commission of Los Angeles County for several years, also testified that he had made an examination of the defendant's "nervous functions, and questioned him"; that he "found nothing at the time of" his "examination that would indicate that he was unable to appreciate the nature and quality of his acts"; that he could distinguish right from wrong and was legally sane. This witness also said that the defendant was "uneducated . . . a man of very inferior intelligence", but that he formed "the opinion that he was simulating insanity, because what he told me sounded so foolish and not in keeping with what a person who is really hallucinating will tell you; more like something a child would tell you when he wanted to make up something". Again, the doctor said: "He has an intelligence equal to, or greater than that of a child of 12 years." Another physician attached to the staff of the Norwalk State Hospital, who according to the testimony had made a special study of mental diseases, testified that he had examined the appellant; that in his opinion the defendant was not insane; and that he could understand the difference between right and wrong. When asked why he formed that opinion the doctor replied: "I formed that opinion because I find in the man no evidence of mental disease. I find him able to appreciate the nature and qualities of his acts, weigh the consequences of his acts; I find no evidence, in other words, of mental disease. This man was able to give me a history of his life. He knew where he was. His memory was unimpaired. He was alert, active, had a correct knowledge of his environments; presented nothing which could be construed as delusions of a typical character or any ideas which sometimes motivate the acts of insane people. There was none of that brought forth. Physical examination of the defendant presented no manifestation of disease. For these reasons, I was led to the conclusion that he was not insane." In addition the gentleman from whose pocket the purse was taken testified that he was jostled while walking down an aisle in the Grand Central Market and that instantly he felt his pocketbook go and grabbed the hand that took it just as it was being passed to a third party; that the defendant was the man who picked his pocket; that he was clean shaven and

his hair was cut, presenting an entirely different appearance from that which he exhibited in court. He further testified that as he saw the pocketbook being taken by the third party the witness said: "That is my property," to which the third party replied: "That is all right, this is a detective." An officer, who was the detective mentioned, testified to the same effect. It is unnecessary for us to comment at length upon this testimony. It cannot be seriously contended that it furnishes an insufficient foundation for the conclusion of the jury even though the evidence opposed to it would have justified a contrary verdict.

 It is next asserted that the trial court committed error when it permitted the witness Brown, whose testimony is substantially stated in the *résumé* already set forth to the effect that the defendant took his pocketbook, etc., to which statement should be added the fact that the witness had never seen the man before and formed no opinion of his sanity or insanity, to testify. Complaint is also made of the testimony of the police officer which was as we noted to the same effect. They say, and properly so, that the sole issue before the court was the sanity of the defendant at the time the acts complained of were committed. But they insist that, "the attempt and purpose was to place full evidence of the offense before the jury—for its prejudicial effect was known by the prosecution". Let us note first, that the judge at the very beginning of the trial informed the jury that the sole issue was whether the defendant was sane or insane, and second, that in his final instructions he was particularly careful to emphasize the same thing. It is difficult to believe, therefore, that the jury could possibly have misunderstood their duty in this particular. Now let us assume a different case, one that is hideous and repulsive in its nature and the manner of its commission. Would not such evidence go a long way toward establishing the insanity of the accused? Or we may assume another situation where the crime is planned and carried out with a methodical niceness, evidencing extreme care to prevent detection, could it be seriously contended that such evidence was not pertinent to the inquiry of whether the accused was sane. So here, the testimony of jostling and the testimony concerning defendant's appearance and what was said and left unsaid at the immediate time are all proper to aid the

jury in determining whether he was sane at the particular time he was engaged in performing the acts. It may not have been of great probative value, but it was admissible. The reasoning in *People* v. *Linton,* 102 Cal. App. 608 [283 Pac. 389, 392], is in point. There the objection was that the trial court read the information to the jury trying the issue of insanity. The District Court of Appeal said: ''Obviously, however, the very purpose of the insanity trial was to ascertain whether appellant had reasoning capacity sufficient to distinguish between right and wrong as to the particular acts he was charged with having committed . . . and manifestly the jury could not intelligently determine that question without first being informed as to the nature and character of such acts.''

There is a further assignment of error to the effect that the trial judge misinstructed the jury. He told them that while generally the burden of proof is upon the prosecution, yet it was subject to this exception that ''Where insanity is relied upon as a defense, the burden of proving the existence of such insanity is on defendant, and it is incumbent upon him to establish, by preponderance of evidence, that he was insane at the time of committing the act charged.'' It is true, of course, as counsel argue, that the burden of proof does not shift, but it is equally true that the defendant when relying upon the plea of insanity must establish that fact by a preponderance of the evidence. Regardless of whether it is ever necessary to instruct jurors in the technical art to the degree here suggested it is patent that in the particular case appellant is grasping at the shadow and not the substance. As heretofore stated, the sole issue in the trial was the sanity of the defendant and it was sufficient to explain to them that the burden of proving insanity by a preponderance of the evidence rested upon the defendant. Where the burden of proof rested generally was a nonessential.

Judgment and order affirmed.

Craig, Acting P. J., and Archbald, J., *pro tem.,* concurred.